William S. Livingston, Jr., et al., as Executors, etc., Respondents, *v.* William Gordon et al., Appellants.

The will of McC. gave to his executors $32,000 in trust to invest and pay the interest to "the New York Home for the Blind, of 219 West Fourteenth street, so long as that institution shall maintain and care for William Gordon, now an inmate of that institution," and in case he was so cared for and maintained during his life, at his death the principal was to be paid to said institution; in case it ceased "to exist or to maintain an institution suitable for the care of the blind" during the life of Gordon, then the income was to be paid to any other society who would maintain and care for him which he might select, the principal to be paid to the society maintaining and caring for him at the time of his death.    At the time the will was executed Gordon was an inmate of the institution maintained at 219 West Fourteenth street by defendant — the Society for the Relief of the Destitute Blind; but before the death of the testator, Gordon was expelled for violation of the rules of the institution; after such death, however, upon learning of the provisions of the will, the society offered to care for and maintain him in its institution or elsewhere; this he refused; he selected the defendant, The St. Joseph's Home, which has since cared for and maintained him.    In an action for a construction of the will, *held*, that the bequest was valid and the said society was entitled to it if willing to conform to the conditions imposed; that the expulsion of Gordon prior to the death of the testator did not affect its right after his death; and, it having offered to perform the condition, was entitled to the legacy, its right not being affected by Gordon's refusal of the offer.

Also *held*, that a provision in the judgment directing as to the disposition of the fund in case of failure of or unwillingness on the part of the society hereafter to care for and support Gordon was unauthorized; that such disposition could only be properly made upon the happening of the contingency.

(Argued January 26, 1881; decided February 11, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 22, 1880, affirming a judgment entered upon a decision of the court on trial at Special Term.

This action was brought to obtain a construction of a provision in the will of Ernest S. McCrackan, deceased.

This will was dated the 11th day of October, 1875; the testator died in February, 1878. The provision of the will referred to is as follows: " I give and devise to my executors the sum of $32,000 in trust to invest the same and pay the interest thereof semi-annually to the New York Home for the Blind, at No. 219 West Fourteenth street, so long as that institution shall maintain and care for William Gordon, now an inmate of that institution, and in case he shall be so cared for and maintained during the balance of his life, then in trust to pay the principal sum of said $32,000 to said institution. And in case the said society shall cease to exist or to maintain an institution suitable for the care of the blind during the life of said William Gordon, then in trust to pay the income of said $32,000 to any other society that will maintain and care for said William Gordon, and which he may select, and to pay the principal of said $32,000 to such society as shall at the death of the said William Gordon be supporting and maintaining him."

At the date of the will the William Gordon therein mentioned was an inmate of the institution maintained at 219 West Fourteenth street in the city of New York by the defendant " the Society for the Relief of the Destitute Blind of the city of New York."

In October, 1877, William Gordon was expelled from the home of the said society for refusal to comply with some of its rules, and has never since been an inmate of the institution and refuses to become an inmate thereof. On the 25th of August, 1878, the said William Gordon, after he became acquainted with the contents of said will, selected the defendant, the St. Joseph's Home, as the society or institution to care for and maintain him, and he has ever since been and now is an inmate of the last-named institution, and is cared for and maintained

by it without compensation. In May, 1879, the defendant, The Society for the Relief of the Destitute Blind, having learned of the provisions of Mr. McCrackan's will, informed the said Gordon that they were ready and willing to care for and maintain him at their institution, or elsewhere, during his life, in conformity with the requirements of said will; this he refused.

*John E. Develin* for appellants. The bequest is legal and valid and contains all the essentials to a valid trust. (*Williams* v. *Williams*, 4 Seld. 548–9 ; *Holmes, etc.,* v. *Mead et al.,* 52 N. Y. 332 ; *McLoughlin* v. *McLoughlin,* 30 Barb. 458 ; *Powers, Ex'x,* v. *Cassidy, Ex'r, etc., et al.,* 79 N. Y. 602 ; Laws of 1848, chap. 319, § 6.) Trusts of personal property may be created in favor of persons specified or to be selected and specified in the future. (*Bucklin* v. *Bucklin,* 1 Keyes, 141 ; *Holmes* v. *Mead,* 52 N. Y. 348 ; Perry on Trusts, § 378 ; 1 R. S. 773, § 1 [1 R. S., Edm. ed., 727].) The St. Joseph's Home is entitled to the income of the fund from the 23d day of August, 1878, the date when the beneficiary, William Gordon, selected it, and it took upon itself to maintain and care for him. (Laws of 1848, chap. 319, § 6 ; *Powers, Ex'x,* v. *Cassidy, Ex'r, supra ;* Perry on Trusts, § 378 ; *Christie* v. *Phyfe,* 19 N. Y. 398 ; 1 Redf. on Wills, chap. 9, § 30 c, sub-div. 14, 15, pp. 430, 431, 432 ; *Norris* v. *Beyes,* 13 N. Y. 273 ; *Taggart et al.* v. *Murray et al.,* 53 id. 233 ; *Stewart* v. *Chambers,* 2 Sandf. Ch. 382 ; 1 Jarman on Wills, chap. 7, p. 427 ; *Doe ex dem.* v. *Turner,* 2 Dowl. & R. 398.) The St. Joseph's Home is also entitled to the income from the death of the testator, or from the date of investing the fund to the 25th of August, 1878. (1 R. S. 726 ; *Kilpatrick* v. *Johnson,* 15 N. Y. 326 ; *Gilman* v. *Reddington,* 24 id. 19 ; *Manice* v. *Manice,* 43 id. 303, 385.) In the construction of the will, the intention of the testator must be the chief point of consideration, and the surrounding circumstances must be considered in arriving at that intention. (4 Kent's Com. 535 ; *Cromer* v. *Pinckney,* 3 Barb. Ch. 466 ; *Button* v. *Am. Tract Soc.,* 23 Vt. 366 ; *Lasher* v. *Lasher,* 13 Barb. 106 ; *Post* v.

*Hoover*, 30 Barb. 312; Ram on Exposition of Wills.) The words " so long as " in the clause of the will were words of limitation, and the contingent event must be in existence at the death of the testator to prevent an interim or hiatus in the ownership of the fund, and if not existent on the testator's death, the legacy remained in the trustees charged with the support of Gordon, unless Gordon exercised the right of selection given him in the will. (*Cooper* v. *Remsen*, 3 Johns. Ch. 382; 5 id. 459; 6 Abb. N. C. 398.) The bequest was to the trustees to hold until the right of any society to the money is fixed by the death of Gordon; hence as the estate is in the trustees, meanwhile the bequest is not held in suspension or rendered void by the donee being undetermined in the interim. (*Gilman* v. *Reddington*, 24 N. Y. 15; *Williams* v. *Williams*, 8 id. 525; *Owens et al.* v. *The Missionary Society*, 14 id. 380; *Beekman* v. *Bonsor*, 23 id. 298; *Coggeshall* v. *Pelton*, 7 Johns. Ch. 292; *Shottwell* v. *Mott*, 2 Sandf. Ch. 46; *Wright* v. *Meth. Ep. Ch.*, 1 Hoffm. 202; 8 N. Y. 525; *Powers, Ex'x*, v. *Cassidy, Ex'r, etc., et al.*, 79 N. Y. 602.)

*Robert A. Livingston and Sidney S. Harris* for respondents. The absence of Gordon from defendant's house, such absence arising from a violation of its rules previous to the testator's death, does not impair defendant's right to the legacy. (*Hogeboom* v. *Hall*, 24 Wend. 146; *Eliot* v. *Eliot*, 10 Allen, 357; *Jackson* v. *Wright*, 3 Wend. 109.) If the maintenance of Gordon is a condition to defendant's right to receive the legacy and its income, the neglect of defendant to maintain him must be willful, that is, a failure to do what is reasonably required of defendant, and as the defendant has done all in its power to comply with the will consistent with a proper management of its institution, it is entitled to the income of the legacy. (*In re Cunningham's Will*, 6 Jur. [N. S.] 902; *Turner* v. *Tibbett*, 2 Younge & Collyer's C. C. 225; 1 Roper on Legacies, 767.) Defendant had a reasonable time after the testator's death to accept the legacy, and by accepting it the defendant has become bound to support Gordon. (*Gridley* v. *Gridley*, 24 N. Y.

130 ; 2 Redfield on Wills, 301 [3d ed.]; *Smith* v. *Jewett*, 40
N. H. 530.)   If upon a true construction of the will the main-
tenance of Gordon at the  home  of defendant is a condition, it
is a condition subsequent, and  the  legacy  vested.   (*Martin* v.
*Ballou*, 13 Barb. 135 ; *Dommitt* v. *Bedford*, 6 T. R. 684 ;
*Finley* v. *King*, 3 Pet. 346, 374.)

MILLER, J.   There can, we think, be no doubt as to the
validity and legality of the bequest made by the testator which
is  the  subject  of  this controversy, and  the  only question pre-
sented is as to the construction to be placed upon the language
employed and the terms and conditions upon which the bequest
was made. ·

By the will of  the testator he gave to his executors the sum
of $32,000, in trust, to invest the same and pay over the inter-
est to the New  York  Home  of  the  Blind,  so  long  as  that
institution should maintain and  care for  William Gordon, who
is stated to be an inmate of  the same; and in case he shall  be
cared for during the balance of  his natural life, then the prin-
cipal sum was to be paid to the institution.    In case the society
ceased  to exist or to maintain an  institution  suitable  for  the
care of  the  blind during the life of  Gordon, then the income
was  to  be  paid  to any other society that would maintain and
care for Gordon, which he might select, and the principal should
be paid  to  such society as  should  at  the death of  Gordon be
supporting and maintaining him.

Although Gordon was an  inmate of  the  institution ·at the
time of  the making of  the will, he had  left at the time of the
testator's death.   The will speaks from the latter date, accord-
ing to a well-settled rule of law, and it must be construed hav-
ing  in view  the  purpose designed  to  be  accomplished.   The
intention of  the  testator  evidently was to accomplish two ob-
jects : first, the  support  of  Gordon ; and  second, to  make a
bequest to the institution for the benevolent purposes for which
it was organized and carried on.   These were co-ordinate and
of  equal consequence in his mind, and  both are to be attained
if practicable.   The  statement  in  the  will  that  Gordon  was

" an inmate of the institution " alone is of no importance if the testator's intention can otherwise be carried into effect. The words employed were merely intended as a designation of the beneficiary and were not a condition of the bequest. If Gordon had left without cause, prior to the testator's death, certainly it could not affect the right of the society to the legacy if it was willing to conform to the conditions imposed by the testator. The whim and caprice of Gordon could not control the right to the legacy; and, unless there was a refusal to support him, and to comply with the requirements of the testator after the bequest was known to the society, the right to the same remains unaffected. The legacy is not bequeathed to Gordon solely, and he has only an interest in it to the extent of a support for life, which consists in the performance by the society of the obligations required by the testator's will. His right, then, is not in any sense to the legacy, but his claim is upon the society; or if it fails to conform to the requirements of the will, upon such other society as may be substituted in its place. The society is entitled to the income, and in conformity with the will must maintain Gordon, not from the income derived from the legacy, but out of such funds as it may have from all sources of revenue.

These remarks bring us to a consideration of the question whether the society has failed substantially to comply with the terms imposed by the testator, or done any act which forfeits its right to the legacy. Upon learning of the provisions of the will through the medium of its proper officer, Gordon was notified in writing that the society was ready and willing to care for and maintain him at its institution or elsewhere during his life, in conformity with the will of the testator. We think the expulsion of Gordon prior to the death of the testator has nothing to do with the right of the society after his death, and the real question is whether it was since then and at the present time it is ready and willing to accept the legacy. We do not deem it necessary, therefore, to inquire whether the expulsion of Gordon was or was not without sufficient cause, and it is enough to say that when the society ceases to

support Gordon and to carry out the benevolent object of the testator in this respect, it will be time to consider whether it has forfeited all right to claim the benefits of the legacy in question. And until this period arrives, it must be held that its right to receive the interest is clear and beyond any question.

It evidently intended, by the notice given to Gordon, to obviate objections of all kinds, for it virtually agrees to support him at any place which may be reasonably designated. The terms of the bequest do not require absolutely and unequivocally that the institution shall maintain and support Gordon within its own precincts; but if for any sufficient reason he cannot conform to the rules and regulations, he may, within the terms of the notice given to him, select some other institution or place at its expense and thus be cared for and supported. Gordon has a right to return and become an inmate of the institution; and while he is bound to observe all reasonable rules of the "Home," if for any just cause this cannot be done, he may be maintained at its expense in some other similar institution. If he chooses to refuse to accept the offer to maintain him, and to be absent without cause, it does not take away the right to the legacy. (*Hogeboom* v. *Hall*, 24 Wend. 146; *Jackson* v. *Wight*, 3 id. 109.) The maintenance of Gordon is a condition appended to defendant's right to receive the legacy and the income, and if the society fail to perform what is reasonably demanded in this respect, and willfully or unjustly refuse to render the support required, or impose any unjust, onerous or improper conditions or restrictions, such conduct would necessarily forfeit its right to the legacy. There must be a reasonable, fair and substantial performance of the condition; and when this is done it is sufficient. (*Tanner* v. *Tebbutt*, 2 Y. & Col. 225; Roper on Legacies, 767.)

It may also be remarked that by the acceptance of the legacy by the society it became lawfully bound to support Gordon (*Gridley* v. *Gridley*, 24 N. Y. 130; 2 Redf. on Wills [2d ed.], 304); and this without regard to the condition whether the

income is sufficient for that purpose (*Smith* v. *Jewett*, 40 N. H. 530); and however burdensome. (2 Redf. on Wills, 304.)

The support of Gordon at the "Home" of the defendant is a condition to be performed after the acceptance of the bequest; and while a beneficial interest is given in the legacy, it is required that Gordon should be maintained. His maintenance is a condition subsequent; and when it becomes impossible to perform such a condition, the estate will not be defeated or forfeited. (*Martin* v. *Ballou*, 13 Barb. 135; *Dommett* v. *Bedford*, 6 Term R. 684; *Finlay* v. *King's Lessee*, 3 Pet. 346, 374.) In such cases the estate continues the same as if no condition was attached. If Gordon refuses to return and live at defendant's institution or to be provided for according to the offer made to him, thus rendering it practically impossible for the society to bestow upon him the benefits intended by the legacy, it cannot affect its right to the same. The reasonable and true construction of the condition of his support is, that the testator only intended that he should be maintained there if he so desired, and that he was not absolutely bound to live there. In the latter case, however, it was not designed that his refusal, which renders a strict performance impossible, should deprive the society of the legacy.

These views lead to the conclusion that the devise to the defendant was valid in law and that it has not been forfeited, and it remained vested in the defendant until an absolute failure to support Gordon as required, in case he was willing to be supported, or until the society shall cease to have a lawful existence or to maintain an institution suitable for the care of the blind during the life of Gordon.

A further result also follows, which is that the defendant, St. Joseph's Home for the Aged, has no interest in or right to the legacy in question. Nor has Gordon any right of selection under the circumstances existing, or any claim upon the legacy otherwise than herein stated. The time has not arrived when he is entitled to exercise any such right, and his choice is of no avail. Nor is it essential, in the present aspect of affairs, that any provision should be made in anticipation of

the society for any reason ceasing to support Gordon during his life, as in such a contingency ample relief could be obtained as already indicated.

We have given due consideration to the various points and suggestions made by the several counsel, and we discover no occasion to change the judgment of the Special Term, except that portion of it which makes a final disposition of the principal of the fund, and directs that in case the Society for the Relief of the Destitute Blind shall during the life of William Gordon be not supporting and maintaining, or be unwilling to maintain and support him at its own institution or elsewhere at any time during his natural life, the executors shall pay the balance to the residuary devisee. No facts appear which require any such provision to be made, and it will be sufficient to make such a disposition of the fund when rendered necessary by the happening of the contingency which requires it, and until then it is not authorized. In this respect the decree should be modified; and otherwise it must be affirmed, and neither party should have costs as against the other upon this appeal.

FOLGER, Ch. J. I concur in this result and in the opinion, but wish to add some words.

The opinion says that Gordon is " bound to observe all reasonable rules and regulations of the home." As a general proposition, this is true. But what may be reasonable rules and regulations of the home for its patients in general may not be reasonable for one taken within its walls in the circumstances and under the conditions wherein Gordon is to be received. For instance, no one in this community can reasonably object that the home should have religious observances, under rules and regulations applicable to all patients, or patients who come into it as a favor sought by them. But in such a case as that of Gordon, who is more like a patient who confers a favor by going into it, and who need not be taken or go unless it is with the will and wish of the home, I think that there should be a scrupulous regard for the compunctions or even whims of

his religious feeling; that his desires or his repugnances in that respect, be they convictions of faith, or prejudices of sect, or blind followings of early training, should be yielded to and accommodated; and that he should not be required by general rules or otherwise to attend religious services that are not agreeable to him.

All concur with MILLER, J., except RAPALLO, J., dissenting, and ANDREWS, J., concurring in result..

Judgment affirmed as modified in accordance with opinion of MILLER, J.